# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHAWNA BAMBLING aka SHAWNA )
L. HUSICK ) Case No.
 )
      Plaintiff, )
v. )
 ) **COMPLAINT**
THE LAW OFFICE OF )
HARRISON ROSS BYCK, ESQ., P.C., )
CACH, LLC )
 )
      Defendants. )

## INTRODUCTION

1.    Shawna Bambling aka Shawna L. Husick ("Bambling") files this lawsuit against The Law Office of Harrison Ross Byck, Esq., P.C. ("Byck") and CACH, LLC ("CACH") for violating the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA").

## PARTIES AND JURISDICTION

2.    Bambling lives in Bedford County, Pennsylvania and is a "consumer" as defined by the FDCPA.

3.    Byck is a law firm organized as a Pennsylvania professional corporation engaged in the business of debt collection and is a debt collector as defined by the FDCPA. Byck's principal place of business is 229 Plaza Boulevard, Suite 112, Morrisville, Pennsylvania 19067.

4.    CACH is a Colorado limited liability company with its principal business located at 4340 S. Monaco Street, 2nd Floor, Denver, Colorado, 80237 and is a debt collector as defined by the FDCPA.

5.    CACH is liable for the actions of Byck.

6. Jurisdiction over Bambling's suit is proper in this Court. 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

7. Venue is proper in this District because Bambling lives in this District, the facts as to Bambling's claim occurred in this District and Defendants transacts business in this District.

## FACTS

8. Bambling defaulted on a credit card issued by Bank of America, N.A. ("BOA").

9. The credit card was used for personal, family, or household purposes.

10. BOA allegedly sold the defaulted account to Square Two Financial Corporation. ("Square Two).

11. Square Two assigned the account to its affiliate CACH, LLC.

12. Byck was retained to collect the debt.

### October 5, 2010 collection letter

13. The letter attached as Exhibit "A" was sent to Bambling.

14. This is a mass produced collection letter.

15. No attorney in Byck's firm reviewed Bambling's file before the letter was sent.

16. The decision to send the letter wasn't made by an attorney.

17. No attorney in Byck's firm saw the letter before it was sent.

18. The letter would cause the least sophisticated debtor to believe that the letter originated with a lawyer.

19. The letter deceptively implies attorney involvement.

### November 13, 2010 phone call

20. On November 13, 2010, at approximately 1:00 pm, Bambling returned a phone call to a man who identified himself as Paul Tyler. Tyler's real name is William Seltzer.

21. Seltzer is employed by Byck as a debt collector.

22. Bambling wanted to set up a payment arrangement. Seltzer demanded an amount Bambling couldn't afford.

23. Seltzer told Bambling that if she didn't agree to the amount he demanded, they would seek a judgment. He said the Sheriff's Office would come assess and sell all of Bambling's belongings.

24. Seltzer questioned Bambling why she couldn't find a job with her prior work history. He inferred that she didn't want to work.

25. Bambling explained to Seltzer that her son's father wasn't paying child support and she was living on unemployment, Seltzer responded by asking Bambling how she planned to feed her kid.

26. Seltzer said if this went to judgment, it would affect Bambling's credit score for the next seven years and prevent her from buying property.

27. Bambling said she didn't want that and wanted to pay an amount she could afford. Accusing Bambling of lying, Seltzer told Bambling she didn't want to pay the debt. If she wanted to pay, she would find the money to do so. He told Bambling she was trying to get out of paying the debt.

28. Seltzer suggested that Bambling borrow the money from family, asked if her parents were financially secure and if not, to get a credit card from them.

29. Bambling was like Oh my God and Seltzer said, "Don't swear at me."

30. Seltzer was unreasonable, belittling, combative and argumentative throughout the call.

### Lawsuit

31. On December 30, 2010, Byck filed suit in the name of CACH, LLC against Bambling.

32. In paragraph 9 of the complaint, Defendants aver CACH, LLC is entitled to a liquidated attorney fee of $1,332.54, which is 20% of the alleged principal balance.

33. The standard credit card agreement between Bambling and BOA does not provide for a liquidated attorney fee.

34. Bambling never agreed to pay a liquidated attorney fee.

35. Defendants cannot produce a writing where Bambling agreed to pay a liquidated attorney fee totaling 20% of the alleged principal balance.

36. Defendants unilaterally changed the terms of the agreement between Bambling and BOA.

37. Defendants' request for a liquidated attorney fee is a false representation of the amount of the alleged debt in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10). In addition, Defendants violated 15 U.S.C. §§ 1692f and 1692f(1) by seeking to collect a debt from Bambling that was not expressly authorized by an agreement or permitted by law.

### Stipulation In Lieu Of Judgment

38. Bambling entered into a monthly payment arrangement with Defendants.

39. The agreement was memorialized in a stipulation in lieu of judgment filed with the Court on January 31, 2011.

### September 7, 2011 phone call

40. On September 7, 2011, Bambling called Seltzer hoping to revise her monthly payment temporarily due to lower income and higher expenses.

41. Seltzer told Bambling she didn't give him a reason and that she should be paying more per month. He again said Bambling was trying to get out of paying the debt.

42. When Bambling asked to move the payment from the 20th of the month to the end of the month, Seltzer said why don't you just not pay it and we will re-file the judgment against you.

43. When Bambling explained she was making less money per month working compared to unemployment, Seltzer said he understood that a dollar today is not worth what it was a year ago, but he has bills to pay too.

44. Seltzer engaged in conduct the natural consequence of which is to harass, oppress, or abuse Bambling in connection with the collection of the debt.

45. Seltzer mentioned post-judgment remedies before suit was filed.

46. Seltzer's representations as to post-judgment remedies are deceptive because Seltzer didn't advise Bambling of her post-judgment rights.

47. As a result of Seltzer's abusive conduct, Bambling was extremely upset and distressed. She felt like she was treated like a low-life, irresponsible mother not interested in gaining employment or paying her debt.

## COUNT I

## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

48. Bambling repeats and re-alleges all the paragraphs above.

49. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(3), 1692e(10), 1692(d), 1692f and 1692f(1).

50.     Bambling suffered and continues to suffer damages, including emotional distress, as a result of Defendants' violations of the FDCPA.

51.     Bambling is entitled to recover all compensatory and actual damages, as well as statutory damages, costs and attorney's fees provided by the FDCPA.

**WHEREFORE,** Shawna Bambling respectfully requests judgment in her favor for all damages to which she is entitled under federal law as follows:

   a.   Actual damages in an amount to be determined by the trier of fact.

   b.   Statutory damages in an amount to be determined by the trier of fact.

   c.   Costs and reasonable attorney's fees.

   d.   Such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

JEFFREY L. SUHER, P.C.

/s/ Jeffrey L. Suher
Jeffrey L. Suher, Esquire
Pa. I.D. # 74924
4328 Old Wm Penn Hwy, Ste 2J
Monroeville, PA 15146
(412) 374-9005
(412) 374-0799 (fax)
lawfirm@jeffcanhelp.com

**JURY TRIAL DEMANDED**